# STATE OF WEST VIRGINIA
## SUPREME COURT OF APPEALS

*In re* **N.B.**

**No. 18-0526** (Kanawha County 17-JA-451)

**FILED**

**November 19, 2018**

EDYTHE NASH GAISER, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

## MEMORANDUM DECISION

Petitioner Father K.B., by counsel Edward L. Bullman, appeals the Circuit Court of Kanawha County's May 7, 2018, order terminating his parental rights to N.B.[1] The West Virginia Department of Health and Human Resources ("DHHR"), by counsel Brandolyn N. Felton-Ernest, filed a response in support of the circuit court's order and a supplemental appendix. The guardian ad litem ("guardian"), William H. Scharf, filed a response on behalf of the children in support of the circuit court's order. On appeal, petitioner argues that the circuit court erred in adjudicating him as an abusing parent and in terminating his parental rights.

This Court has considered the parties' briefs and the record on appeal. The facts and legal arguments are adequately presented, and the decisional process would not be significantly aided by oral argument. Upon consideration of the standard of review, the briefs, and the record presented, the Court finds no substantial question of law and no prejudicial error. For these reasons, a memorandum decision affirming the circuit court's order is appropriate under Rule 21 of the Rules of Appellate Procedure.

On October 19, 2017, the DHHR filed an abuse and neglect petition alleging that the mother gave birth to a younger child that was born exposed to illegal substances.[2] When the child was born, the mother tested positive for ecstasy and methamphetamine. The DHHR also alleged that the mother attempted to sell the baby for $300. In regard to N.B., the child at issue in this appeal, the DHHR alleged that she previously lived with her maternal grandmother until her paternal grandmother assumed custody. During the investigation, a Child Protective Services ("CPS") worker called the paternal grandmother and reported that the grandmother "sounded high" because her speech was slurred and she seemed to have trouble putting words together. The paternal grandmother explained that her son, petitioner, had custody of N.B., but that he lets her keep the child. The paternal grandmother informed the CPS worker that she had terminal cancer, that she was in chemotherapy, and that she regularly took two types of opiates to manage her pain. According to the DHHR, the CPS worker also called and spoke to petitioner's sister.

---

[1]Consistent with our long-standing practice in cases with sensitive facts, we use initials where necessary to protect the identities of those involved in this case. *See In re K.H.*, 235 W.Va. 254, 773 S.E.2d 20 (2015); *Melinda H. v. William R. II*, 230 W.Va. 731, 742 S.E.2d 419 (2013); *State v. Brandon B.*, 218 W.Va. 324, 624 S.E.2d 761 (2005); *State v. Edward Charles L.*, 183 W.Va. 641, 398 S.E.2d 123 (1990).

[2]Petitioner is not the father of this child; therefore, the child is not at issue in this appeal.

1

She explained to the CPS worker that she took custody of the child for two years when petitioner left West Virginia and refused to come back to take care of the child. The DHHR alleged that the paternal grandmother was an inappropriate caregiver due to her terminal cancer, the effects of her prescribed medications, and her history of heroin abuse. Further, the DHHR alleged that petitioner neglected the child's emotional needs due to his long absences from her life. Petitioner waived the preliminary hearing in the matter and the circuit court granted his motion for visitation with the child.

In its November of 2017 court summary, the DHHR explained that petitioner did not provide food during the supervised visits, attempted to discuss the case, and used foul language in front of the child. On November 28, 2017, the circuit court held an adjudicatory hearing. The CPS worker testified to that there was misuse of the paternal grandmother's prescription medications by her boyfriend. The CPS worker also explained that the paternal grandmother's boyfriend had a history of substance abuse and cared for the child when the paternal grandmother was not feeling well. The CPS worker further explained that petitioner could not be located at the time the petition was filed, was not compliant with the investigation process, and denied that his mother was an inappropriate caregiver. According to the CPS worker, petitioner refused to communicate with the CPS worker or give her his current address. She further indicated that petitioner allegedly had his own home, but usually stayed with his sister or his mother. Petitioner did not testify at the adjudicatory hearing. The circuit court found that the DHHR presented clear and convincing evidence that the child was neglected and adjudicated petitioner as an abusing parent. The circuit court noted petitioner's objections and granted petitioner supervised visitation with the child.

In its court summary submitted in January of 2018, the DHHR reported that visits between petitioner and the child were going well. However, the DHHR also reported that petitioner failed to submit to any drug screening. In its March of 2018 court summary, the DHHR reported that petitioner failed to attend the multidisciplinary treatment team ("MDT") meeting in February of 2018 and noted that the MDT recommended that the termination of petitioner's parental rights would be in the child's best interests due to his noncompliance with services.

On April 25, 2018, the circuit court held a dispositional hearing. The DHHR informed the circuit court that the paternal grandmother had passed away. The DHHR presented evidence that petitioner failed to comply with parenting sessions prior to March of 2018 and that he failed to admit to any wrongdoing during the proceedings. The DHHR also presented evidence that petitioner did not attend any drug screens during the proceedings. Petitioner testified that he had a home and was employed. The maternal grandmother testified that she had been the child's primary caregiver for a period of time during her early life. She further explained that the paternal grandmother had visits with the child and would take her for a few days at a time, but after one visit, the paternal grandmother never brought the child back and did not respond to the maternal grandmother's telephone calls. The maternal grandmother also testified that the child stayed with her aunt at times when her paternal grandmother was sick. She testified that the child "was a rag doll and just got moved around to whoever would keep her." Following the presentation of testimony, the DHHR moved for the termination of petitioner's parental rights. Counsel for petitioner argued that petitioner was adjudicated on the sole basis of leaving the

child with his mother, who was, at the time of the dispositional hearing, deceased. Counsel further argued that there were no flaws in petitioner's parenting. The circuit court found no reasonable likelihood that the conditions of neglect could be substantially corrected in the near future and that the termination of petitioner's parental rights was in the child's best interests. Ultimately, the circuit court terminated petitioner's parental rights in its May 7, 2018, dispositional order.[3] It is from this order that petitioner appeals.

The Court has previously established the following standard of review:

> "Although conclusions of law reached by a circuit court are subject to *de novo* review, when an action, such as an abuse and neglect case, is tried upon the facts without a jury, the circuit court shall make a determination based upon the evidence and shall make findings of fact and conclusions of law as to whether such child is abused or neglected. These findings shall not be set aside by a reviewing court unless clearly erroneous. A finding is clearly erroneous when, although there is evidence to support the finding, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed. However, a reviewing court may not overturn a finding simply because it would have decided the case differently, and it must affirm a finding if the circuit court's account of the evidence is plausible in light of the record viewed in its entirety." Syl. Pt. 1, *In Interest of Tiffany Marie S.*, 196 W.Va. 223, 470 S.E.2d 177 (1996).

Syl. Pt. 1, *In re Cecil T.*, 228 W.Va. 89, 717 S.E.2d 873 (2011). Upon our review, this Court finds no error in the proceedings below.

On appeal, petitioner first argues that the circuit court erred in adjudicating him as an abusing parent. In support, petitioner argues that the circuit court erroneously based adjudication upon its finding that his mother, the child's paternal grandmother, was an inappropriate caregiver. He further asserts that there was no evidence that the child was ever harmed in the paternal grandmother's care. We do not find petitioner's argument persuasive. We have held that

> "W.Va. Code [§] 49-6-2(c) [now West Virginia Code § 49-4-601(i)], requires the [DHHR], in a child abuse or neglect case, to prove 'conditions existing at the time of the filing of the petition . . . by clear and convincing [evidence].' The statute, however, does not specify any particular manner or mode of testimony or evidence by which the [DHHR] is obligated to meet this burden." Syllabus Point 1, *In Interest of S.C.*, 168 W.Va. 366, 284 S.E.2d 867 (1981).

Syl. Pt. 1, *In re Joseph A.*, 199 W.Va. 438, 485 S.E.2d 176 (1997) (citations omitted). Further, pursuant to West Virginia Code § 49-1-201, a "neglected child" is a child

---

[3]According to the parties, the mother is currently participating in a post-adjudicatory improvement period. The permanency plan for the child is reunification with her mother pending the successful completion of her post-adjudicatory improvement period. The concurrent permanency plan for the child is adoption by her maternal grandmother.

[w]hose physical or mental health is harmed or threatened by a present refusal, failure or inability of the child's parent, guardian or custodian to supply the child with necessary food, clothing, shelter, supervision, medical care or education, when that refusal, failure or inability is not due primarily to a lack of financial means on the part of the parent, guardian or custodian[.]

Here, sufficient evidence of petitioner's neglect of the child existed to adjudicate him as an abusing parent.[4] Contrary to his argument, petitioner was not adjudicated solely upon a finding that his mother was an inappropriate caregiver. During the proceedings below and on appeal, petitioner fails to acknowledge that he neglected the child by leaving her in the care of others for most of her life. The record shows that petitioner began leaving the child to live with various family members at a young age and the child was cared for by various family members throughout her life. When the abuse and neglect petition was filed, the child was eight years old and had already lived with her maternal grandmother, paternal grandmother, and paternal aunt, each for years at a time. While petitioner testified that he frequently saw the child at his mother's home, there is no evidence that petitioner ever provided the child with proper supervision or other support. Further, the record shows that, at some point during the child's life, petitioner left the state for two years and refused to come back to care for her; petitioner's sister cared for the child during that time. Petitioner also fails to acknowledge that the child was at risk of harm and further neglect while she lived in the paternal grandmother's home due to her terminal cancer and her prescription pain medication use. Petitioner also ignores the fact that when the paternal grandmother was sick, the child was often cared for by the paternal grandmother's boyfriend, who had a history of substance abuse. Lastly, the record shows that petitioner could not be located to take custody of the child when the abuse and neglect petition was filed; when found, refused to give the DHHR his address; and refused to cooperate with the DHHR's investigation into the circumstances of the case. Based upon this evidence, we find that the circuit court properly adjudicated petitioner as an abusing parent.

Next, petitioner argues that the circuit court erred in terminating his parental rights. In support, he argues that there were no problems with his parenting that needed to be addressed or remedied. We disagree. West Virginia Code § 49-4-604(b)(6) provides that circuit courts are to terminate parental rights upon findings that there is "no reasonable likelihood that the conditions of neglect or abuse can be substantially corrected in the near future" and that termination is necessary for the child's welfare. West Virginia Code § 49-4-604(c)(3) provides that a situation in which there is no reasonable likelihood the conditions of abuse and neglect can be substantially corrected includes one in which the abusing parent "ha[s] not responded to or followed through with a reasonable family case plan or other rehabilitative efforts of social, medical, mental health or other rehabilitative agencies designed to reduce or prevent the abuse or neglect of the child[.]"

---

[4]"'Abusing parent' means 'a parent, guardian or other custodian . . . whose conduct has been adjudicated by the court to constitute child abuse or neglect as alleged in the petition charging child abuse or neglect." W.Va Code § 49-1-201.

4

Here, petitioner again argues that the child suffered no harm while in the care of the paternal grandmother. While petitioner argues that the DHHR could not identify any flaws in his parenting, petitioner again fails to acknowledge that, throughout his child's life, he never provided her with proper supervision, support, or cared for her on his own. He further argues that his visits with the child went well and that he had housing and employment, but he refuses to acknowledge that he failed to attend parenting sessions and drug screens as required by his family case plan. Further, he did not attend the MDT meeting in February of 2018. We have noted that

> [i]n order to remedy the abuse and/or neglect problem, the problem must first be acknowledged. Failure to acknowledge the existence of the problem, i.e., the truth of the basic allegation pertaining to the alleged abuse and neglect or the perpetrator of said abuse and neglect, results in making the problem untreatable . . . .

*In re Timber M.*, 231 W.Va. 44, 55, 743 S.E.2d 352, 363 (2013) (quoting *In re: Charity H.*, 215 W.Va. 208, 217, 599 S.E.2d 631, 640 (2004)). Petitioner's failure to acknowledge the conditions of neglect, as well as his noncompliance with services, clearly indicates that there was no reasonable likelihood that the conditions of neglect could be substantially corrected in the near future. Additionally, the termination of petitioner's parental rights was in the child's best interests in order for her to achieve permanency for the first time in her life, after living with various family members throughout her childhood.

> Moreover, we have held that

> "[t]ermination of parental rights, the most drastic remedy under the statutory provision covering the disposition of neglected children, W.Va. Code [§] 49-6-5 [now West Virginia Code § 49-4-604] . . . may be employed without the use of intervening less restrictive alternatives when it is found that there is no reasonable likelihood under W.Va. Code [§] 49-6-5(b) [now West Virginia Code § 49-4-604(c)] . . . that conditions of neglect or abuse can be substantially corrected." Syllabus point 2, *In re R.J.M.*, 164 W.Va. 496, 266 S.E.2d 114 (1980).

Syl. Pt. 5, *In re Kristin Y.*, 227 W.Va. 558, 712 S.E.2d 55 (2011). For these reasons, the termination of petitioner's parental rights was appropriate.

Lastly, because the child's mother's abuse and neglect proceedings are ongoing, this Court reminds the circuit court of its duty to establish permanency for the child. Rule 39(b) of the Rules of Procedure for Child Abuse and Neglect Proceedings requires:

> At least once every three months until permanent placement is achieved as defined in Rule 6, the court shall conduct a permanent placement review conference, requiring the multidisciplinary treatment team to attend and report as to progress and development in the case, for the purpose of reviewing the progress in the permanent placement of the child.

Further, this Court reminds the circuit court of its duty pursuant to Rule 43 of the Rules of Procedure for Child Abuse and Neglect Proceedings to find permanent placement for the child within twelve months of the date of the dispositional order. As this Court has stated,

> [t]he [twelve]-month period provided in Rule 43 of the West Virginia Rules of Procedures for Child Abuse and Neglect Proceedings for permanent placement of an abused and neglected child following the final dispositional order must be strictly followed except in the most extraordinary circumstances which are fully substantiated in the record.

*Cecil T.*, 228 W.Va. at 91, 717 S.E.2d at 875, Syl. Pt. 6. Moreover, this Court has stated that

> [i]n determining the appropriate permanent out-of-home placement of a child under W.Va. Code § 49-6-5(a)(6) [1996] [now West Virginia Code § 49-4-604(b)(6)], the circuit court shall give priority to securing a suitable adoptive home for the child and shall consider other placement alternatives, including permanent foster care, only where the court finds that adoption would not provide custody, care, commitment, nurturing and discipline consistent with the child's best interests or where a suitable adoptive home can not be found.

Syl. Pt. 3, *State v. Michael M.*, 202 W.Va. 350, 504 S.E.2d 177 (1998). Finally, "[t]he guardian ad litem's role in abuse and neglect proceedings does not actually cease until such time as the child is placed in a permanent home." Syl. Pt. 5, *James M. v. Maynard*, 185 W.Va. 648, 408 S.E.2d 400 (1991).

For the foregoing reasons, we find no error in the decision of the circuit court, and its May 7, 2018, dispositional order is hereby affirmed.

Affirmed.

**ISSUED**:  November 19, 2018

**CONCURRED IN BY**:

Chief Justice Margaret L. Workman
Justice Elizabeth D. Walker
Justice Tim Armstead
Justice Evan H. Jenkins
Justice Paul T. Farrell sitting by temporary assignment

6